NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | Bankruptcy Case No. 05-31567 |
| RICHARD A. SPAIR, | : | Chapter 13 |
| Debtor. | : | |
| RICHARD A. SPAIR, | : | |
| Plaintiff, | : | |
| vs. | : | **Lead Adversary No. 06-1344** |
| 21st CAPITAL CORP., | : | |
| Defendant. | : | |
| COUNTRYWIDE HOMES LOANS, INC. as assignee of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as nominee for QUICKEN LOANS INCORPORATED | : | |
| Plaintiff, | : | |
| vs. | : | Adversary No. 06-3003 |
| 21st CAPITAL CORP. | : | |
| Defendant. | : | |
| CITIFINANCIAL SERVICES, INC., | : | |
| Plaintiff, | : | |
| vs. | : | Adversary No. 07-1139 |
| 21st CAPITAL CORP. | : | |
| Defendant. | : | **MEMORANDUM OPINION**<br>Trial: October 20, 2009 |

# **APPEARANCES**

**Attorney for Plaintiff**
Patrick J. Madden, Esquire
Madden & Madden, P.A.
108 Kings Highway East - Suite 200
Haddonfield, New Jersey 08033

**Attorney for 21st Capital Corp.**
Gregg P. Tabakin, Esquire
Fein, Such, Kahn & Shepard, P.C.
7 Century Drive, Suite 201
Parsippany, New Jersey 07054

On February 17, 2006, Richard A. Spair filed the within Complaint to Prove the Extent and Validity of Liens. The parties to that proceeding entered into a consent order consolidating that adversary proceeding, 06-1344, with two others, 06-3003 and 07-1139, entered on the docket on March 22, 2007. Each complaint or amended complaint and its attendant answers and counterclaims addressed the priority and extent of liens. On May 15, 2009, the Court entered a Consent Order bifurcating the trial into a priority portion and a damages portion. The Court conducted the trial on the priority issue on October 20, 2009, and reserved decision. The following represents the Court's findings of fact and conclusions of law.

## Findings of Fact

At issue is the relative priority of mortgages held by Countrywide Home Loans, Inc. ("Countrywide") and 21st Capital Corporation ("21st Capital") encumbering property formerly held by the Debtor, Richard A. Spair, known as 1605 Sheridan Dive, Wall Township, New Jersey, (identified as Lot 16.13, Block 942 on the Official Tax Map of the Township of Wall.) Mr. Spair sold the property pursuant to an Order of this court and the proceeds are being held in escrow by the Chapter 13 trustee.

The parties have stipulated to the essential facts. The property was encumbered by a Mortgage dated July 10, 2003 and recorded September 1, 2003 at Mortgage Book 8274, Page 669 with the Office of the Clerk of Monmouth County. The mortgage was executed to secure a loan from Option One Mortgage Corporation in the principal amount of $675,000 ("Option One mortgage"). As of September 1, 2003, the Option One mortgage was in a first priority position. There was also a second mortgage in favor of Citifinancial Services, Inc. dated September 3, 2003, and recorded October 16, 2003. The Citifinancial mortgage was executed to secure the principal sum of $20,864.57.

3

The Debtor subsequently refinanced the Option One mortgage with Quicken Loans, Inc., at which time Quicken Loans's title search revealed the existence of both the Option One mortgage and the Citifinancial mortgage. The Quicken Loans transaction closed on June 5, 2004, Quicken Loans disbursed funds on June 10, 2004. In advance of the closing, Quicken Loans did not obtain what is known in the industry as a "run-down" of its title commitment, nor did it file a Notice of Settlement with respect to its impending closing.

At closing, Quicken Loans obtained a subordination of Citifinancial's second mortgage. Quicken Loans advanced the sum of $691,150 to the Debtor. The loan proceeds were used to satisfy the Option One mortgage in full and that mortgage was discharged of record. To secure that loan, the Debtor granted a mortgage to Mortgage Electronic Registrations Systems as nominee for Quicken Loans. That mortgage was recorded on July 5, 2004 in the Office of the Clerk of Monmouth County. By assignment dated August 9, 2006, Quicken Loans assigned the mortgage to Countrywide.

Between the date of the issuance of the Quicken Loans title commitment and closing, the Debtor executed an additional mortgage in favor of 21st Capital. Because it did not do a run down, Quicken Loans was unaware of the 21st Capital mortgage. The 21st Capital mortgage is dated May 4, 2004, and was recorded May 21, 2004 with the Office of the Clerk of Monmouth County. 21st Capital's attorney obtained a title report that revealed the existence of the prior Option One mortgage. In connection with the transaction, 21st Capital filed a Notice of Settlement that was recorded on May 19, 2004. The 21st Capital mortgage states on its face that it is a second mortgage.

Countrywide presented the testimony of Lawrence Fineberg, Esq. who serves as regional counsel for New Jersey and Delaware for Fidelity National Title Group. He is the author of, among other publications, a treatise on title insurance called the Handbook of New Jersey Title Practice.

4

He was admitted as an expert on title issues. He prepared an expert report and a supplement to that report.

21st Capital presented the testimony of Clark L. Cornwell III, Esq. Mr. Cornwell is a self-employed attorney and a consultant for Old Republic National Title Insurance Company. He was admitted as an expert on title issues. He prepared an expert report.

## Conclusions of Law

The priority of these mortgages must be determined under New Jersey law. *See, e.g.,* United States v. Avila, 88 F.3d 229 (3d Cir. 1996) (applying New Jersey law to determine if equitable subrogation was appropriate). Mortgages are interests in real property and as such "are created and defined in accordance with the law of the situs of the real property." In re Jason Realty, L.P., 59 F.3d 423 (3d Cir. 1995). As the Third Circuit has explained: "A federal court in bankruptcy is not allowed to upend the property law of the state in which it sits, for to do so would encourage forum shopping and allow a party to receive 'a windfall merely by the happenstance of bankruptcy.'" Id. at 427 (quoting Butner v. United States, 440 U.S. 48, 55 (1979)). It is also well established that where state law governs a particular issue and "when there is no decision from the state's highest court directly on point, [the federal court is] charged with predicting how that court would resolve the question at issue." Colliers Lanard & Axilbund v. Lloyds of London, 458 F.3d 231, 236 (3d Cir. 2006). "When predicting how the state's highest court would resolve the issue, [the federal court] must take into consideration: (1) what that court has said in related areas; (2) the decisional law of the state intermediate courts; (3) federal cases interpreting state law; and (4) decisions from other jurisdictions that have discussed the issue." Id.; *see also*, In re W.R. Grace & Co., 418 B.R. 511 (D. Del. 2009).

New Jersey is a race notice state. *See*, N.J.S.A. § 46:22-1. Accordingly, the first recorded

instrument has priority over later recorded instruments. Felicioni v. Administrative Office of Courts, 404 N.J. Super. 382 (App. Div. 2008) (The basic rule of lien priority in New Jersey is "first in time, first in right").  Both experts in this case agreed that as matters currently stand, the 21st Capital mortgage is in a first priority position because that mortgage was the first recorded. Therefore, the only way for Countrywide to prevail is through application of the doctrine of equitable subrogation.

Subrogation rights may be created in various ways: 1) by agreement; 2) by statute; or 3) by equitable application by a court. Culver v. Ins. Co. of North America, 115 N.J. 451, 456 (1989) (discussing the application of the doctrine in the insurance context). Countrywide relies on the third option, and asks this Court to invoke the doctrine to change the priority position of the parties.  New Jersey courts have long accepted the doctrine of equitable subrogation.  *See, e.g.,* Van Winkle v. Fordonsky, 114 N.J. Eq. 121 (E & A 1933) ("equitable subrogation is purely an invention of equity to accomplish justice, and does not obtain where harm would result ....")  The New Jersey Chancery Court  recently recognized the  continued vitality of the doctrine as a tool of equity:

> the doctrine of equitable subrogation provides that if a third-party loans or advances funds to pay off an existing mortgage or other encumbrance in the belief that no junior liens encumber the subject premises, and it later appears that intervening liens existed, the new lender will be deemed to be substituted into the position of the prior mortgage holder by equitable assignment of the prior mortgage to give effect to the new lender's expectation and to prevent unjust enrichment of the junior encumbrances. The right of subrogation is recognized to the extent that the money advanced is actually applied to the payment of senior liens, plus interest on the amount so applied.

UPS Capital Business Credit v. Abbey, 408 N.J. Super. 524, 529-30 (Ch. Div. 2009).

Countrywide maintains that because its funds were used to pay off the existing first mortgage and it expected that it would receive a first mortgage position on the Spair property, this Court should put Countrywide in that position. 21st Capital cites Metrobank for Savings, FSB v. National

Community Bank, 262 N.J. Super. 133 (App. Div. 1993) for the proposition that a new lender is not entitled to court imposed subrogation if it possesses actual knowledge of the prior encumbrance. While 21st Capital stops short of arguing that Countrywide had actual knowledge of the 21st Capital lien, it argues that Countrywide was willfully ignorant of its existence because its conduct did not comport with industry standards. In such a situation, 21st Capital argues, the grossly negligent party may not be the beneficiary of equitable subrogation.

The undisputed facts establish that Richard Spair did not identify the 21st Capital mortgage in his Affidavit of Title for the Quicken Loans closing and that Quicken Loans's title search did not reveal it. The undisputed facts also establish that Quicken Loans, failed to order a run-down or continuation search that might have alerted Quicken Loans to the existence of the 21st Capital mortgage that was recorded over two weeks prior to the signing of the Quicken Loans mortgage and three weeks prior to the funding of the loan. 21st Century maintains that Quicken Loans was willfully ignorant of the intervening lien and the failure to order a rundown search was grossly negligent and reckless conduct. Mr. Cornwell, 21st Century's expert, testified that it was the industry practice to conduct a run-down search within 48 hours prior to closing. Even Mr. Fineberg, Countrywide's expert, conceded that doing a run-down search was the better practice.

There are a number of New Jersey cases that conclude that ordinary negligence is not a bar to application of the doctrine of equitable subrogation. *See, e.g.,* Kaplan v. Walker, 164 N.J. Super. 130, 138 (App. Div. 1978). In First Fidelity Bank, National Association South v. Travelers Mortgage Services., 300 N.J. Super. 559, 565 (App. Div. 1997), the court stated: "although some courts have denied subrogation when the lender's ignorance of junior encumbrances is due to his own negligence, the better view, followed in New Jersey, is that negligence is not a bar to subrogation unless subsequent intervening rights are involved."

The difficulty for the Court is that even if it accepts the proposition that Quicken Loan's failure to do a run-down search in this situation was gross negligence, there are no cases in New Jersey that hold that gross negligence or reckless disregard of industry practice is a bar to application of the doctrine of equitable subrogation. At best, there are cases that recite oblique maxims, such as: because "the doctrine of equitable subrogation is an equitable doctrine, 'subrogation is applied only in the exercise of the court's equitable discretion.'" U.S. Bank Nat'l Ass'n v. Hylton, 403 N.J. Super. 630 (App. Div. 2008) (quoting Metrobank for Savings, FSB v. Nat'l Comty Bank, 262 N.J. Super. 133, 144 (App. Div. 1993)). Such cases are hardly a solid launch pad from which to create new law on the issue of equitable subrogation.

As previously stated, federal courts faced with issues of state law are instructed to attempt to predict what the highest court in the state would do in the same situation. Colliers Lanard & Axilbund v. Lloyds of London, 458 F.3d 231, 236 (3d Cir. 2006). In reaching that determination, federal courts should look to the decisions of the state's lower courts as well as federal cases interpreting that state's law. The lower court decisions in New Jersey focus on several considerations: giving effect to lender expectations, preventing unjust enrichment, and ensuring that no party changed its position in reliance on the mistake. In a case concerning equitable subrogation, the Third Circuit Court of Appeals noted:

> We also point out that the chief rationale for allowing equitable subrogation is to prevent the junior encumbrancer from being unjustly enriched at the expense of a new purchaser or mortgagee of the property. Thus, courts permit equitable subrogation even when the purchaser is negligent in not learning of the junior encumbrance. See Home Owners' Loan Corp. v. Collins, 120 N.J. Eq. 266, 184 A. 621, 623 (1936). See also 29 N.J. Practice § 145 at 669 ("And negligence which has not resulted in harm to anyone should not be invoked to permit unjust enrichment of the later lienors through their unearned and fortuitous advancement in priority by reason of the mistake of the grantee in paying and taking a discharge instead of an assignment.").

United States v. Avila, 88 F.3d 229, 238 (3d Cir. 1996).  Given those rationales for the imposition of equitable subrogation, it is illogical to conclude that gross negligence should be treated any differently than ordinary negligence.  Accordingly, the Court declines to find that the New Jersey Supreme Court, if faced with this issue, would decide that gross negligence is an absolute bar to application of the doctrine of equitable subrogation.

Absent an absolute bar, the court must determine if application of the doctrine is appropriate on the facts presented. The primary question thus becomes whether 21st Capital would be unjustly enriched at the expense of Countrywide if the Court were to reject application of the doctrine of equitable subrogation.  21st Capital argues that "there is no evidence that the old mortgagee was unjustly enriched.  The old mortgagee, Option One, or its assigns, merely received what it was due under the mortgage." *21st Capital brief* at 9.  21st Capital's focus on Option One is misplaced.  The cases focus on unjust enrichment of junior mortgages; not the mortgage that is being taken out with the new funds.  *See, e.g.,* Metrobank for Savings, FSB v. Nat'l Community Bank, 262 N.J. Super. 133, 144 (App. Div. 1993) ("Courts will apply the doctrine to prevent unjust enrichment of junior encumbrances"). To establish unjust enrichment under New Jersey law, the party seeking to invoke the doctrine must show that the other party received a benefit and that retention of that benefit without payment would be unjust.  VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994). Countrywide has met that burden here because 21st Capital received the benefit of moving from a second mortgage position to a first mortgage position by mere happenstance.  It received a windfall based on Countrywide's mistake.  It is immaterial to an unjust enrichment analysis that 21st Capital did not engage in any wrongdoing, it is enough that it is benefitting at another party's expense. Thus, the primary rationale for equitable subrogation favors granting it in this situation.

The secondary considerations also favor allowing equitable subrogation.  First, all of the

evidence indicates that the parties intended for Countrywide to be in a first mortgage position and 21st Capital in a second. The 21st Capital mortgage was not to secure the lending of money, it was to guarantee a corporate debt. At the time it was executed, 21st Capital was aware of the prior mortgage of Option One. The 21st Capital mortgage provides on its face that it is a second mortgage. Second, the testimony established that 21st Capital did not negatively change its position in reliance on the payoff of the Option One mortgage. Accordingly, the Court finds no bar to the imposition of equitable subordination in this case.

One final note: 21st Capital persuasively argued that courts should not sanction the callous disregard of the state's recording system. This Court agrees; this ruling should not be interpreted as condoning a failure to adhere to industry norms in conducting run-down searches. That being said, the Court disagrees with 21st Capital's conclusion that applying equitable subrogation in this instance would result in a cascade of parties no longer bothering to do searches. As evidenced by this case, the cost and delay attendant in having to rely on a court to grant the equitable remedy of subrogation should be a sufficient deterrent to parties.

Conclusion

The Court finds that the Countrywide mortgage should be placed in a first priority position. The attorney for Countrywide should submit a form of order in accordance with this opinion.

*/s/ Kathryn C. Ferguson*
KATHRYN C. FERGUSON
US Bankruptcy Judge

Dated: January 8, 2010